Valorie MARSHALL, Plaintiff–Appellant,

v.

NYC BOARD OF ELECTIONS, Defendant–Appellee.

No. 07–4561–cv.

United States Court of Appeals, Second Circuit.

April 7, 2009.

Valorie Marshall, New York, NY, pro se.

Sharyn Michele Rootenberg, New York City Law Department, New York, NY, for Appellee.

Present: CHESTER J. STRAUB, ROSEMARY S. POOLER, REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Appellant Valorie Marshall, pro se, appeals the district court's grant of summary judgment dismissing her claims against the New York City Board of Elections ("BOE") of race, sex, and religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a district court's order granting summary judgment de novo, and ask whether the court properly concluded that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003).

■ The district court properly found that Marshall failed to exhaust her religious discrimination claim. In neither Marshall's initial letter to the New York City Commission on Human Rights ("CCHR"), nor her administrative charge, did she make any allegation that she was discriminated against on the basis of her religion, nor did she include any incidents that would have allowed the CCHR to investigate such allegations. Accordingly, her religious discrimination claim was not reasonably related to her charge of race and gender discrimination. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir.2001) (holding religious discrimination claim not reasonably related to EEOC charge alleging discrimination on basis of age and sex).

■ With respect to Marshall's hostile work environment claim, a review of the evidence shows that, even if all the incidents that Marshall alleged had occurred, the conduct was not sufficiently pervasive to alter the conditions of her employment, nor was there any evidence that it was on account of Marshall's race or sex. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir.2002). Her supervisor's alleged references to lunch dates and weekend outings with his same-sex partner do not amount to harassment. Such discussions are equally unprofessional to, but no more harassing to Marshall than would be references to heterosexual relationships. Although Marshall may have been legitimately offended when her supervisor allegedly showed her a sexual device he had purchased for his partner, that one event does not rise to the severity necessary to constitute a hostile work environment, *see id.*, nor does it demonstrate that her workplace was permeated with sex or gender intolerance. Marshall's allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior are troubling.

But Title VII is not a "general civility code for the American workplace;" it prohibits only harassment that is discriminatory. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Marshall also alleges that she suffered adverse job reassignments and disciplinary measures in retaliation for filing an employment discrimination charge. To establish a prima facie case of retaliation under Title VII, a plaintiff is required to show: "[1] that she engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against [her], and [4] that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (quotation marks omitted). In the absence of direct evidence of retaliatory motive, courts apply the *McDonnell Douglas* test. *See Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir.1988) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to a retaliation claim). Under *McDonnell Douglas*, the defendant has the burden to demonstrate a "legitimate, nondiscriminatory reason" for the adverse action against the plaintiff. 411 U.S. at 802, 93 S.Ct. 1817. If the defendant articulates such a reason, the burden shifts back to the plaintiff "to show that the reasons proffered by the defendant were not the defendant's true reasons, but rather a pretext for [retaliation]." *Taitt*, 849 F.2d at 777.

Marshall's job transfer in July 2004 to the Scribe and Payroll units was not retaliatory because it occurred before Marshall first filed a charge of discrimination in August 2004. In October 2005, Marshall was transferred from her job in the Man-

hattan office to a job in the executive office, where her title remained the same, but she alleges she had been reassigned to mailroom duties that she believes were "beneath [her] qualifications." We assume, without deciding, that such a transfer could constitute a materially adverse action. *See, e.g., Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207–08 (2d Cir.2006) (retaliation may be actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job title, grade, or hours of work"). Marshall also argues that she earned less overtime pay after her transfer.

■ BOE Administrative Manager Pamela Perkins stated that the reasons for Marshall's October 2005 transfer included: (1) Marshall was a Democrat, and the BOE needed to place another Democrat in the administrative assistant title in the executive office to ensure equity between the political parties, and (2) to avoid the difficulties Marshall had working with the management in the Manhattan office, as evinced by Marshall's employee evaluations. Although Marshall claims that Perkins told her the "real reason" for her transfer was her former supervisor's request, she presents no evidence that he harbored retaliatory motives. *Cf. Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir.2001) ("[Plaintiff] has not offered any evidence that the [defendant's] justifications, even if pretextual, served as a pretext for [ ] discrimination." (quotation marks omitted)). Marshall does not offer evidence from which a reasonable factfinder could conclude that the BOE's reasons were pretexts for retaliation.

■ Marshall also received two employee advisories on March 29, 2005, shortly after her employment discrimination complaint was dismissed by the CCHR. However, the BOE offered evidence that one of

those advisories was motivated by a legitimate business reason, that Marshall violated office procedures by excusing her own latenesses prior to submitting documentation of transit delays. Marshall has not pointed to any evidence that this explanation was a pretext for retaliation. The other employee advisory was rescinded. Marshall points to no circumstances suggesting that the issuance of the later-rescinded advisory was sufficiently "adverse" such that it "could well have dissuaded a reasonable employee in [her] position from complaining of unlawful discrimination." *Kessler*, 461 F.3d at 209.

We have carefully reviewed the Appellant's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.